## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIAMA OGILVIE,** | : | **CIVIL ACTION NO. 1:13-CV-3007** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA LAWYERS FUND** | : | |
| **FOR CLIENT SECURITY,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter are three motions

(Docs. 26, 38, 59) to dismiss the amended complaint (Doc. 24) filed by *pro se* plaintiff

Mariama Ogilvie ("Ogilvie"). Ogilvie brings civil rights claims pursuant to 42 U.S.C.

§ 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*,

against the Pennsylvania Lawyers Fund for Client Security ("Fund") and the

following Fund board members and staff, in their individual and official capacities:

Kathryn J. Peifer, Edwin H. Bleacher, III, Grace R. Schuyler, Robert A. Graci,

Bishop Keith W. Reed, Sr., Lewis F. Gould, Jr., and Stefanie J. Salavantis

(collectively, "Fund officials"). Further, Ogilvie challenges the constitutionality of

certain Pennsylvania disciplinary enforcement rules pursuant to 42 U.S.C. § 1983,

asserting claims against Kathleen Kane, Attorney General for the Commonwealth

of Pennsylvania ("the Attorney General"), and the Pennsylvania Supreme Court.

Finally, Ogilvie advances state law claims of misrepresentation, fraud, false

statement, and theft against three former clients, arising from complaints filed with

the Fund. Additionally before the court is Ogilvie's motion (Doc. 63) for leave to file

a second amended complaint.[1]  For the reasons that follow, the court will grant the motions to dismiss and deny Ogilvie's motion for leave to file a second amended complaint.

## I.   <u>Factual Background & Procedural History</u>[2]

The provenance and substance of the instant matter inheres in the policies and procedures which govern the Fund.  The Fund is an account established by the Pennsylvania Supreme Court "to aid in ameliorating the losses caused to clients and others by defalcating members of the Bar acting as attorney or fiduciary." PA. RULES OF DISCIPLINARY ENFORCEMENT ("PA. R.D.E.") 502(a).  Discretionary disbursements may be made therefrom at the direction of either the Pennsylvania Supreme Court or a quorum of the Fund's board.  PA. R.D.E. 502(a), 503(d).  The Pennsylvania Supreme Court appoints members of the board, and contributions from the state bar are pooled to finance the Fund.  PA. R.D.E. 502(a), 503(a).  The Fund routinely submits to the Pennsylvania Supreme Court a list of attorneys whose misconduct has occasioned the reimbursement of a former client's claim. PA. R.D.E. 531.  No such attorney is eligible for reinstatement to active status until the Fund is repaid for the disbursement made on the attorney's behalf.  <u>Id.</u>

---

[1] The court notes that Ogilvie seeks leave to file a "third amended complaint." (Doc. 63).  However, the presently operative complaint is Ogilvie's first amended pleading in the matter *sub judice*.  (Doc. 24).  The court will thus refer to Ogilvie's motion as a request to file a second amended complaint.

[2] In accordance with the standard of review for a Rule 12(b)(6) motion to dismiss, the court will "accept all well-pleaded facts in the [amended] complaint as true and view them in the light most favorable" to Ogilvie.  <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004).

Ogilvie is an attorney formerly admitted to practice law in Pennsylvania. (Doc. 24 ¶ 29). On or around September 2009, Ogilvie was involved in a car accident whereupon she lost consciousness and suffered a concussion. (Id. ¶ 71). Ogilvie continues to experience physical and psychological infirmities, including head trauma, as a result of the accident. (Id. ¶¶ 22-23, 32). In May 2010, the Pennsylvania Supreme Court issued an order ("the 2010 order") placing Ogilvie on inactive disabled status and directing "that all adversarial hearing[s] . . . be held in abeyance until further order of the Court." (Id. ¶¶ 29, 72).

In 2010 or early 2011, sometime after Ogilvie transitioned to inactive status, the Fund contacted her regarding a complaint filed by her former client Herbert Simpson ("Mr. Simpson"). (Id. ¶ 73). Ogilvie petitioned the Fund, via telephone and letter, for a continuance based upon the 2010 order. (Id. ¶¶ 75-76). The Fund denied Ogilvie's request by letter, informing her that proceedings pertaining to Mr. Simpson's complaint would not be suspended. (Id. ¶ 77). Ogilvie subsequently spoke with Executive Director Kathryn J. Peifer ("Ms. Peifer"), who explained that upon consideration of Ogilvie's request for a continuance, the board had determined that the Fund was not subject to the 2010 order. (Id. ¶ 78). Thereafter, the Fund held a hearing regarding Mr. Simpson's complaint. (Id. ¶ 79). The Board ultimately reimbursed Mr. Simpson for the $5000 he claimed in losses due to Ogilvie's alleged misconduct. (Id. ¶¶ 79, 161, 164). The Fund then informed Ogilvie that a lien for $5000 would be placed against her. (Id. ¶ 80).

Sometime around June 2013, Ogilvie contacted the Pennsylvania Supreme Court to reinstate her active status as a member of the state bar. (Id. ¶ 104). The

Pennsylvania Supreme Court instructed that she would be required to repay the Fund for its $5000 disbursement to Mr. Simpson before petitioning for reinstatement of active status. (Id.) Sometime thereafter, denying any and all misconduct alleged in Mr. Simpson's complaint, Ogilvie requested that the Fund reconsider its prior adjudication. (Id. ¶¶ 82, 105-12). However, she became too ill to follow up on this request. (Id. ¶¶ 82, 105).

In October 2013, the Fund informed Ogilvie by letter that her former client Patti Johnson ("Ms. Johnson") sought reimbursement from the Fund for losses allegedly suffered as a result of Ogilvie's misconduct. (Id. ¶¶ 3, 127-28). In a follow-up letter dated December 6, 2013, the Fund directed Ogilvie to respond within thirty days if she intended to request a hearing or to defend against the allegations in Ms. Johnson's complaint. (Id. ¶¶ 3-4). The letter indicated that the Fund would otherwise allow the matter to proceed without Ogilvie's participation. (Id. ¶ 5).

Ogilvie contacted Ms. Peifer by telephone and requested a continuance of proceedings concerning Ms. Johnson's complaint, pursuant to the 2010 order. (Id. ¶ 84). Ms. Peifer directed Ogilvie to submit a written request for same and indicated that she would bring the matter to the attention of the board during its review of Ms. Johnson's submission. (Id. ¶ 85). This matter is still pending before the Fund.

Ogilvie commenced the instant action by filing a complaint on December 17, 2013.[3] (Doc. 1). On December 23, 2013, the court granted Ogilvie's motion for leave to proceed *in forma pauperis*. See 28 U.S.C. § 1915(a)(1); (Doc. 4). Ogilvie subsequently filed an amended complaint on August 16, 2014. (Doc. 24). Ogilvie first alleges that the Fund and the Fund officials (collectively, "Fund defendants") discriminated against her on the basis of disability, in violation of the ADA. (Id. ¶¶ 90-97). Ogilvie further asserts, pursuant to § 1983, that the Fund defendants violated (1) her Fourteenth Amendment rights to equal protection and procedural due process; (2) her First Amendment right to freedom of association; and (3) her right to unimpaired private contract under the Contract Clause of the United States Constitution, U.S. CONST. art. I, § 9, cl. 1. (Doc. 24 ¶¶ 129-45). Additionally, Ogilvie brings state law claims of false statement, misrepresentation, fraud, and theft against Mr. Simpson, Donna Simpson, and Ms. Johnson (collectively, "former clients"). (Id. ¶¶ 159-61). Lastly, Ogilvie challenges the constitutionality of the following Pennsylvania rules under § 1983: Pennsylvania Rules of Disciplinary Enforcement 503, 521, and 531, enacted by the Pennsylvania Supreme Court, and Fund Regulations 3.2(g), 3.4(b), and 3.4(c), promulgated by the Fund. (Id. ¶¶ 162-76). Her claims regarding Disciplinary Rules 503 and 531 are against the Pennsylvania Supreme Court and the Attorney General, and her claims concerning Disciplinary Rule 521 and Fund Regulations 3.2(g), 3.4(b), and 3.4(c) are against the Pennsylvania Supreme Court, the Attorney General, and the Fund. (Id.)

---

[3] The court and parties are familiar with the unconventional procedural course charted in this case. As such, the court recites only the most pertinent procedural background herein.

5

To rectify her alleged injuries, Ogilvie seeks a declaration that Pennsylvania Rules of Disciplinary Enforcement 503, 521, and 531 and Fund Regulations 3.2(g), 3.4(b), and 3.4(c) violate the ADA, the Fourteenth Amendment, the First Amendment, and the Contract Clause. (Id. ¶ 177). She further prays to enjoin enforcement of said rules by the Fund and the Pennsylvania Supreme Court and seeks damages from all named defendants. (Id. ¶¶ 27, 177).

In three separate motions (Docs. 26, 38, 59), various institutional and individual defendants have moved to dismiss Ogilvie's amended complaint in its entirety. The motions (Docs. 26, 38) filed by the Fund defendants and by the Pennsylvania Supreme Court invoke Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6). The motion (Doc. 59) filed by the Attorney General invokes only Rule 12(b)(1). On March 3, 2015, Ogilvie moved (Doc. 63) for leave to file a second amended complaint pursuant to Rule 15(a)(2). The motions are fully briefed and ripe for disposition.

## II.   **Standard of Review**

### A.   **Rule 12(b)(1): Subject Matter Jurisdiction**

Rule 12 of the Federal Rules of Civil Procedure enumerates various defenses and objections a party may raise in response to a pleading and the manner in which such defenses and objections are to be asserted. See FED. R. CIV. P. 12. Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the

action from the court's jurisdictional ken, see Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977); or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction, see Tolan v. United States, 176 F.R.D. 507, 510 (E.D. Pa. 1998). In either instance, it is the plaintiff's burden to establish jurisdiction. See Mortensen, 549 F.2d at 891 ("[T]he plaintiff will have the burden of proving that jurisdiction does in fact exist."). Courts should grant a Rule 12(b)(1) motion only when it appears with certainty that assertion of jurisdiction would be improper. See Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000) ("A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408 (3d Cir. 1991)); see also Tolan, 176 F.R.D. at 510 ("Only if it appears to a certainty that the pleader will not be able to assert a colorable claim of subject matter jurisdiction may the complaint be dismissed.").

### B.   Rule 12(b)(6): Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cty. of Allegheny,

515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' "  Id. at 130 (quoting Iqbal, 556 U.S. at 675).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### C. Rule 15(a): Leave to File an Amended Complaint

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course, either within twenty-one days of service of process or within twenty-one days of a defendant's Rule 12 motion or responsive pleading. FED. R. CIV. P. 15(a)(1). Otherwise, a party may amend "only with the opposing party's written consent or the court's leave" FED. R. CIV. P. 15(a)(2). The Federal Rules direct the court to "freely give leave when justice so requires." Id. Under this liberal standard, courts will grant leave to amend unless the opposing party can establish undue delay, bad faith on the part of the movant, futility of amendment, or prejudice to the non-moving party. See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Combined Ins. Co. of Am. v. Bastian, No. 09-CV-111, 2009 WL 5111794, at *1 (M.D. Pa. Dec. 17, 2009). "Amendment [is] futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014) (citing Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010)).

## III.    Discussion

Defendants challenge the court's subject matter jurisdiction based on the

allegations in Ogilvie's amended complaint[4] and assert that Ogilvie's factual

averments, even accepted as true, are insufficient to establish her entitlement to

_____

[4] The Fund defendants summarily assert that the Rooker-Feldman doctrine prevents the court from exercising subject matter jurisdiction over Ogilvie's claims. (Doc. 32 at 12-13). The Rooker-Feldman doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); see Lance v. Dennis, 546 U.S. 459, 446 (2006) ("The doctrine applies only in 'limited circumstances' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." (internal citation omitted)).

Ogilvie's case does not fit this paradigm. Ogilvie is not asking the court to review and reject the judgment of the Fund which awarded $5000 to Mr. Simpson. (See Doc. 24 ¶ 177). Contrarily, Ogilvie raises federal claims that were never adjudicated as part of the proceedings before the Fund. This court's adjudication of Ogilvie's federal claims would not "require the court to conclude that the [Fund] made an incorrect factual or legal determination," Desi'z Pizza v. City of Wilkes-Barre, 321 F.3d 411, 421 (3d Cir. 2003), nor would federal relief cause the Fund to reverse its decision to issue a disbursement to Mr. Simpson. See In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005). Accordingly, the court concludes that the Rooker-Feldman doctrine does not act to deprive the court of subject matter jurisdiction over Ogilvie's claims.

The court also rejects the Fund defendants' alternative assertion that the Younger abstention doctrine bars Ogilvie's claims with respect to the complaint that is currently pending before the Fund. (Doc. 32 at 11-12). Pursuant to Younger v. Harris, 401 U.S. 37 (1971), federal courts must abstain from exercising jurisdiction over claims "when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Miller v. Mitchell, 598 F.3d 139, 146 (3d Cir. 2010). The court finds that the third Younger factor is absent in this matter. The Fund operates with the singular purpose of investigating and recompensing claims of attorney misconduct. The Fund defendants proffer no explanation as to how Ogilvie may raise her federal constitutional claims in the proceedings before the Fund. As such, the court finds the Younger abstention doctrine to be inapplicable.

relief under the ADA; § 1983 and the First and Fourteenth Amendments and the

Contract Clause; and state law governing claims of false statement,

misrepresentation, fraud, and theft.  Defendants further contend that Ogilvie's

request for leave to file a second amended complaint should be denied as futile.

The court will address these issues *seriatim*.

## A.    Article III Standing

Article III, Section 2 of the United States Constitution confers upon the

federal courts the power to adjudicate "Cases" and "Controversies."  U.S. CONST.

art. I, § 2.  "No principle is more fundamental to the judiciary's proper role in our

system of government than th[is] constitutional limitation of federal-court

jurisdiction . . . ."  Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. E. Ky.

Welfare Rights Org., 426 U.S. 26, 37 (1976)).  Absent a case or controversy, the court

cannot proceed and must dismiss the action.  See *Ex parte* McCardle, 7 Wall. 506,

514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause.

Jurisdiction is power to declare the law, and when it ceases to exist, the only

function remaining to the court is that of announcing the fact and dismissing the

cause.").

To satisfy the case or controversy requirement and confer jurisdiction upon

the court, plaintiffs must have standing.  See Valley Forge Christian Coll. v. Am.

United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982); see also

Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 258 (3d Cir. 2009) (citing Sprint

Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008)).  The "irreducible

constitutional minimum of standing" requires that a plaintiff establish: (1) an injury

in fact—"an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical;' " (2) "a causal connection between the injury and the complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant;' " and (3) that it is " 'likely,' as opposed to merely speculative, 'that the injury will be redressed by a favorable decision.' " Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted). With Lujan's factors as guideposts, the court must satisfy itself that a "substantial controversy" exists between "parties having adverse legal interests." 1st Westco Corp. v. Sch. Dist. of Phila., 6 F.3d 108, 113 (3d Cir. 1993).

The Attorney General contends that she is not causally linked to the instant dispute because the Pennsylvania Supreme Court, not the Attorney General, is charged with enforcing the disciplinary rules at issue. (Doc. 60 at 6-7). Citing Third Circuit precedent, the Attorney General argues that (1) a plaintiff challenging the constitutionality of a state law may assert a claim against the state official "who is charged with the statute's enforcement," and (2) the official must have "either enforced, or threatened to enforce" the statute against the plaintiff. 1st Westco Corp., 6 F.3d at 113; (Doc. 60 at 7-8). She further notes that "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." 1st Westco Corp., 6 F.3d at 113; (Doc. 60 at 7-8).

Under Pennsylvania Disciplinary Rule of Enforcement 103, the Pennsylvania Supreme Court "has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in . . . the Constitution of

Pennsylvania)" and to promulgate rules "in furtherance thereof." PA. R.D.E. 103. Further, the Attorney General has not threatened to take any action with respect to the disciplinary rules at issue or the circumstances surrounding Ogilvie's dispute with the Fund. (Doc. 60 at 8). Consequently, no case or controversy exists between Ogilvie and the Attorney General. See 1st Westco Corp., 6 F.3d at 113. The court is therefore without subject matter jurisdiction to decide the claims brought against the Attorney General, and each such claim will be dismissed.

### B. Legislative Immunity

Absolute legislative immunity protects officials from suit for "all actions taken 'in the sphere of legitimate legislative activity.' "[5] Bogan v. Scott–Harris, 523 U.S. 44, 54 (1998) (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). Legislative immunity does not just insulate officials from monetary damages, but cloaks them in immunity from all suits. Id. at 52 (discussing the need to shield legislators from the "time and energy required to defend against a lawsuit"); Larsen v. Senate of Pa., 152 F.3d 240, 253 (3d Cir. 1998). Courts and their members are immune from suit under this doctrine when acting in their legislative capacity. Sup. Ct. of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719, 743 (1980); see Gallas v. Sup. Ct. of Pa., 211 F.3d 760, 773 (3d Cir. 2000).

The motive or intent of the official performing the act is irrelevant; the court's analysis must focus on the nature of the action taken. Id. at 54. An act must

---

[5] The defendant bears the burden of establishing a right to absolute immunity. See Waris v. Frick, No. 06-5189, 2007 WL 954108, at *6 n.8 (E.D. Pa. Mar. 28, 2007) (quoting Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993)).

be both substantively and procedurally legislative in nature to entitle an official to immunity. _In re_ Montgomery Cty., 215 F.3d 367, 376 (3d Cir. 2000). "An act is substantively legislative if it involves 'policy-making of a general purpose' or 'line-drawing.' It is procedurally legislative if it is undertaken 'by means of established legislative procedures.' " Id. (internal citations omitted). Administrative and executive acts are not entitled to immunity. Carver v. Foerster, 102 F.3d 96, 100 (3d Cir. 1996).

The Pennsylvania Supreme Court contends that Ogilvie's suit against it is barred by the doctrine of legislative immunity. (Doc. 40 at 7-8). Referring the court to Disciplinary Rule 103, the Pennsylvania Supreme Court notes that the Pennsylvania Constitution authorizes its oversight of attorneys' conduct and promulgation of associated rules. PA. R.D.E. 103. The court agrees that the Pennsylvania Constitution explicitly assigns a policy-making function to the Pennsylvania Supreme Court, rendering its action in passing the Pennsylvania Rules of Disciplinary Enforcement "substantively legislative." _In re_ Montgomery Cty., 215 F.3d at 376. However, the court lacks sufficient information to conclude that the process by which the Pennsylvania Supreme Court promulgates the Disciplinary Rules is procedurally legislative. See id.; Goodwin v. Castille, 465 F. App'x 157, 161 (3d Cir. 2012) (finding the circulation of proposals, active deliberation, and voting to be sufficient evidence of legislative procedure) (nonprecedential); Gallas, 211 F.3d at 774 ("This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will

of the people which the governing body has been chosen to serve."). Hence, the court will not afford legislative immunity to the Pennsylvania Supreme Court.

## C.     Quasi-Judicial Immunity

A judge is immune  from liability for all actions taken within his or her judicial capacity. <u>Mireles v. Waco</u>, 502 U.S. 9, 9 (1991); <u>Forrester v. White</u>, 484 U.S. 219, 225-27 (1988). Similarly, the doctrine of quasi-judicial immunity insulates from suit those public officials who "perform functions closely associated with the judicial process."[6] <u>Locke v. Caldwell</u>, No. 07-2272, 2008 WL 2096812, at *3 (E.D. Pa. May 16, 2008) (quoting <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 200 (1985)). The dispositive inquiry in determining whether to afford an individual quasi-judicial immunity is "the nature of the function performed, not the identity of the actor who performed it." <u>Tucker v. I'Jama</u>, 173 F. App'x 970, 971 (3d Cir. 2006) (quoting <u>Forrester</u>, 484 U.S. at 229). In other words, quasi-judicial immunity attaches when a public official's role is "functionally comparable to that of a judge," <u>Keystone Redevelopment Partners, LLC v. Decker</u>, 631 F.3d 89, 95 (3d Cir. 2011) (quoting <u>Hamilton v. Leavy</u>, 322 F.3d 776, 785 (3d Cir. 2003)), or when a public official acts "pursuant to court directive," <u>Wilson v. Pennsylvania</u>, No. CIV.A. 13-1529, 2015 WL 1186004, at *5 (W.D. Pa. Mar. 13, 2015) (citing <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 460 (3d Cir. 1969)); <u>see also</u> <u>Alexander v. McMonagle</u>, No. 99-1298, 1999 WL 1210844,

---

[6] The Supreme Court has held that absolute judicial and quasi-judicial immunity, unlike legislative immunity, does not protect officials from actions for prospective injunctive relief. <u>Mireles</u>, 502 U.S. at 9 n.1 (citing <u>Pulliam v. Allen</u>, 466 U.S. 522, 536-543 (1984)).

at *1 (E.D. Pa. Dec. 9, 1999) ("Quasi-judicial officers who act in accordance with their duties or at the direction of a judicial officer are immune from suit.").

A public official's role is functionally comparable to that of a judge when he or she is required to "exercise a discretionary judgment" akin to that of a judge. Stacey v. City of Hermitage, 178 F. App'x 94, 103 n.5 (3d Cir. 2006) (quoting Antoine, 508 U.S. at 436). The Third Circuit instructs district courts to consider the following factors when analyzing the applicability of quasi-judicial immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

Keystone, 631 F.3d at 95 (citing Cleavinger, 474 U.S. at 202).

The Fund officials assert quasi-judicial immunity from Ogilvie's individual-capacity claims against them. (Doc. 32 at 8-10). They argue that the Fund "performs a traditional adjudicatory function," necessitating protection for its uncompensated board members. PA. R.D.E. 503(e); (Doc. 32 at 9-10). They further note that the Fund is required to provide notice and an opportunity to be heard to any attorney who becomes the subject of an investigation. PA. R.D.E. 521(b). They point to Pennsylvania Rule of Disciplinary Enforcement 503(g) as unambiguous evidence of the Pennsylvania Supreme Court's enacting intent; Rule 503(g) provides that "[m]embers of the Board, members of hearing committees, Counsel to the Board and Staff shall be immune from civil suit for any conduct in the course of

16

their official duties." PA. R.D.E. 503(g). The Fund officials also aver that, although the adjudication process does not include a right of appeal, the Fund is subject to the "procedures of any forum [which it invokes] . . . when seeking reimbursement" from defalcating attorneys. (Doc. 32 at 9).

The balance of the aforementioned factors supports quasi-judicial immunity for the Fund officials. The job functions performed by the Fund officials are closely associated with the judicial process: board members are required to exercise discretion akin to that of a judge in determining whether complainants are entitled to relief, and staff act pursuant to judicial directives. See Keystone, 631 F.3d at 95; Wilson, 2015 WL 1186004, at *5. The Fund's processes evince certain hallmarks of adversarial proceedings such as, *inter alia*, affording notice and an opportunity to be heard to respondent attorneys and allowing said attorneys to petition for reconsideration following an unfavorable ruling. PA. R.D.E. 521(b), (e). Moreover, when the Fund reimburses a claimant for their losses, the offending attorney is not automatically required to compensate the Fund. Rather, the Fund may elect to prosecute claims for restitution separately in a court of competent jurisdiction. PA. R.D.E. 503(d)(9). The court thus concludes that the Fund officials act in a quasi-judicial capacity and are immune from suit for damages. All claims against the Fund officials in their individual capacities will be dismissed.

### D.   ADA Claim

Ogilvie asserts a disability discrimination claim against the Fund defendants pursuant to Title II of the ADA. (See Doc. 24 ¶¶ 90-97). The Fund defendants respond that Ogilvie's claim must fail because (1) Title II of the ADA does not

provide for individual liability; and (2) Ogilvie does not satisfactorily state a claim under Title II of the ADA. (Doc. 32 at 10, 14-15).[7] The court will address each riposte in turn.

### 1. *Individual Liability*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in Title II, "public

---

[7] The Fund defendants argue that Ogilvie's ADA and § 1983 claims are time-barred by the statute of limitations governing constitutional tort actions. Civil rights claims are governed by the state statute of limitations applicable to personal injury actions. See Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008); O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). In Pennsylvania, the applicable limitations period is two years. See PA. CONS. STAT. § 5524(7); see also Disabled in Action of Pa., 539 F.3d at 208. "[U]nder federal law, which governs the accrual of section 1983 claims, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the . . . action." Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)).

Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint. See FED. R. CIV. P. 8(c). Additionally, Rule 12(b) requires that all defenses be asserted in an answer except those expressly enumerated in the Rule. See FED. R. CIV. P. 12(b). The Federal Rules do not require a plaintiff to proffer specific allegations regarding the timing of the alleged offense, and Rule 12(b) does not provide for the pre-answer assertion of a limitations defense. See id.; Wilson v. McVey, 579 F. Supp. 2d 685, 689 (M.D. Pa. 2008). A district court may, however, dismiss a complaint as time-barred if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1974)). The court declines defendants' invitation to do so. Ogilvie has not offered precise detail regarding the particular timing of the alleged offenses; such detail is not yet required.

entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; [or] (C) the National Railroad Passenger Corporation, and any commuter authority."  42 U.S.C. § 12131.

The plain language of § 12132 applies only to public entities, not individuals. See Emerson v. Thiel Coll., 296 F.3d 184, 189 (3d Cir. 2002) ("[I]ndividuals are not liable under Title I and II of the ADA."); Calloway v. Boro of Glassboro Dep't of Police, 89 F. Supp. 2d 543, 557 (D.N.J. 2000); Yeskey v. Pennsylvania, 76 F. Supp. 2d 572, 575 (M.D. Pa. 1999).  However, the Third Circuit has held that ADA  claims for prospective injunctive relief against state officers in their official capacity are not barred by Title II's proscriptive language.  Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002).  In the matter *sub judice*, Ogilvie seeks prospective injunctive relief against the Fund officials in their official capacities.  The court will thus proceed to consider Ogilvie's ADA claim under Rule 12(b)(6).

## 2. *Rule 12(b)(6)*

To state a claim for disability discrimination under Title II of the ADA, Ogilvie must allege that she: "(1) ha[d] a disability; (2) was otherwise qualified to participate in a [Fund] program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability."  Chambers *ex rel.* Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). Ogilvie "need only show that intentional discrimination was the *but for* cause of the allegedly discriminatory action" to satisfy the third element.  New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 301 (3d Cir. 2007).

In the amended complaint, Ogilvie asserts that the Fund defendants discriminated against her on the basis of disability by denying her request to continue the proceedings regarding Mr. Simpson's complaint and by failing to appoint a guardian *ad litem* to represent her therein. (Doc. 24 ¶¶ 90-97). The Fund defendants argue that Ogilvie's claim must fail because the Fund is not required to make accommodations of this nature. (Doc. 32 at 14-15). They contend that doing so would fundamentally alter their program. (Id.)

The implementing regulations of the ADA require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130. A plaintiff asserting a "reasonable accommodation" claim must plead facts which suggest that his or her requested accommodations were reasonable under the circumstances. See Muhammad v. Ct. Com. Pl. of Allegheny Cty., 483 F. App'x 759, 763 (3d Cir. 2012) (citing Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 783 (7th Cir. 2002)) (nonprecedential); Richardson v. Folino, No. CIV.A. 12-87, 2012 WL 6552916, at *18 n.13 (W.D. Pa. Dec. 14, 2012) ("[A] determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry." (quoting Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995)).

Ogilvie briefly addresses the reasonableness of her accommodation requests in the amended complaint, asserting that her "request for an indefinite continuance

was . . . not unreasonable given that the duration and condition of her illness did not have a definite time." (Doc. 24 ¶ 117). Ogilvie also posits that the 2010 Pennsylvania Supreme Court order—which changed her professional status from active to "inactive disabled"—required the Fund to hold all proceedings "in abeyance until further order" of the Pennsylvania Supreme Court. (Id. ¶¶ 29, 72). She states that "incapacitated persons [do not] have criminal or civil proceedings against them until their capacity is returned." (Id. ¶ 116).

It is readily apparent that Ogilvie misconstrues the intended effect of the 2010 order and its relevance to her ADA cause of action. (See id. ¶¶ 9, 11, 20, 88, 116). The Pennsylvania Supreme Court appears to have issued the order pursuant to Pennsylvania Rule of Disciplinary Enforcement 301, which is titled "Proceedings Where an Attorney is Declared to be Incapacitated or Severely Mentally Disabled." PA. R.D.E. 301. Rule 301 delineates certain circumstances under which an admitted attorney who suffers from a severe mental disability or incapacity may be transitioned to inactive status. Id. When an attorney's poor mental or physical health necessitates such a change during the pendency of proceedings before the Disciplinary Board of the Supreme Court, Rule 301 provides that "the Court may order that any pending disciplinary proceeding against the respondent shall be held in abeyance." PA. R.D.E. 301(d). Rule 301 further directs that the Pennsylvania Supreme Court may appoint counsel to represent the respondent attorney if disciplinary proceedings continue and the respondent is without adequate representation. Id. Ostensibly Ogilvie misreads the provisions of Rule 301 and the 2010 order to (1) enjoin *all* current and future criminal and civil proceedings for the

duration of her incapacity; and (2) entitle her to appointed representation as needed therein. Ogilvie's manifest misapprehensions, which undergird her factually sparse pleadings, are inapposite to her ADA claim. She offers no additional averments to bolster her claim that she was subject to discrimination because of her disability.

The Fund defendants contend that "an indefinite continuance would fundamentally alter the purpose of the Fund by harming its intended beneficiaries, clients of Pennsylvania attorneys." (Doc. 32 at 15). In support of their position, they note that the Pennsylvania Supreme Court established the Fund for the purpose of "aid[ing] in ameliorating the losses caused to clients and others by defalcating members of the Bar acting as attorney or fiduciary." PA. R.D.E. 502(a); (Doc. 32 at 15). In light of the Fund's objective, the court agrees that a policy which empowers respondent attorneys to halt Fund investigations indefinitely would render the Fund virtually inoperative. At a minimum, the Fund's efforts to redress attorney misconduct by reimbursing former clients would be severely frustrated.

Ogilvie's allegations fall far short of raising a plausible inference that that she was subject to discrimination because of her disability. Chambers, 587 F.3d at 189. Even accepting the allegations of the amended complaint as true, the court concludes that Ogilvie fails to plead facts sufficient to support a claim under the

ADA.  Chambers, 587 F.3d at 189.  Hence, Ogilvie's ADA claim will not survive dismissal.[8]

### E.    Section 1983 Claims

Ogilvie next alleges pursuant to § 1983 that the Fund defendants violated her Fourteenth Amendment rights to equal protection and due process; her First Amendment right to freedom of association; and her right to maintain private contracts free from state impairment under the Contract Clause.  Ogilvie further challenges the constitutionality of Pennsylvania Rules of Disciplinary Enforcement 503, 521, and 531 and Fund Regulations 3.2(g), 3.4(b), and 3.4(c) by asserting claims against the Pennsylvania Supreme Court and the Fund.[9] [10]  Defendants assert that Ogilvie's § 1983 claims are barred by the Eleventh Amendment and are factually insufficient to satisfy Rule 12(b)(6).  The court will consider defendants' adjurations *in hoc sensu.*

---

[8] Ogilvie does not bring her ADA claim pursuant to § 1983.  (See Doc. 24 ¶¶ 90-97).  The court notes that in A.W. v. Jersey City Public Schools, 486 F.3d 791 (3d Cir. 2007), the Third Circuit sitting *en banc* determined that violations of Title II of the ADA were not actionable under § 1983.  Thus, Ogilvie's allegations of disability discrimination would also fail if construed under § 1983.

[9] Ogilvie additionally asserts these claims against the Attorney General.  As discussed *supra*, the Attorney General will be dismissed from the instant suit for lack of subject matter jurisdiction.

[10] The Fund officials are not named as defendants on these counts in the amended complaint.  (See Doc. 24).  However, the court is mindful of its obligation to "liberally construe a *pro se* litigant's pleadings."  Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011).  Reading Ogilvie's pleadings *in toto*, it appears that Ogilvie intended to assert said claims against the Fund officials, in addition to the Pennsylvania Supreme Court and the Fund.  (See Doc. 24 ¶ 177).  The court will construe Ogilvie's pleadings accordingly.

### 1.     *Sovereign Immunity*

The Eleventh Amendment precludes private federal litigation against a state and its agencies.[11]  Hans v. Louisiana, 134 U.S. 1, 15-16 (1890); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008).  Eleventh Amendment sovereign immunity is subject to three basic exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex Parte* Young, a state official may be sued in his or her official capacity for prospective injunctive relief.  Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Koslow, 302 F.3d at 168; Hindes v. FDIC, 137 F.3d 148, 165 (3d Cir. 1998).

With respect to the first exception, it is well-settled that Congress had no intention to abrogate the states' sovereign immunity by enacting § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).  Furthermore, Pennsylvania has unequivocally withheld its consent to such suits.  Section 8521 of Title 42 of the Pennsylvania Code clearly states, "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the Constitution of the United States."

---

[11] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.

42 PA. CONS. STAT. § 8521(b); see Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981); Lombardo, 540 F.3d at 196 n.3.

### a. The Fund and the Pennsylvania Supreme Court

Under the Pennsylvania Constitution, all state courts are part of a unified judicial system governed pursuant to the general supervisory and administrative authority vested in the Pennsylvania Supreme Court. See PA. CONST. art. V, §§ 1, 2, 10; see also Callahan v. City of Phila., 207 F.3d 668, 672 (3d Cir. 2000). As part of the unified judicial system, each of the state courts and its agencies are arms of the " 'Commonwealth government' and thus are state rather than local agencies." Callahan, 207 F.3d at 672; see Benn v. First Jud. Dist. of Pa., 426 F.3d 233, 239-41 (3d Cir. 2005) (holding that when an arm of the unified judicial system is sued, the Commonwealth is the real party in interest). Applying these principles to the matter *sub judice*, the Pennsylvania Supreme Court and the Fund—an agency of the Pennsylvania Supreme Court and a part of the unified judicial system—are arms of the state. See PA. R.D.E. 502, 503(g). Hence, they are immune from Ogilvie's § 1983 claims under the Eleventh Amendment principles described above. See Benn, 426 F.3d at 239-41. The motions to dismiss will be granted insofar as Ogilvie seeks to assert claims against the Pennsylvania Supreme Court and the Fund under § 1983.

### b. The Fund Officials

The Fund defendants contend that Ogilvie's § 1983 claims against the Fund officials do not fall within the *Ex Parte Young* exception to Eleventh Amendment immunity. (Doc. 32 at 6-7). Defendants' averments on this point miss the mark.

25

In <u>Hindes v. FDIC</u>, the Third Circuit held that when a state official is sued in his or her official capacity, and when the remedy sought is injunctive relief, the official qualifies as a person acting "under color of state law" for purposes of § 1983. <u>Hindes</u>, 137 F.3d at 165 (citing <u>*Ex Parte* Young</u>, 209 U.S. 123 (1908)). Under this defined set of circumstances, a § 1983 suit is not barred by sovereign immunity under the Eleventh Amendment. <u>Id.</u> at 165-66 (citing <u>Hafer v. Melo</u>, 502 U.S. 21, 27 (1991)); <u>see</u> <u>Will</u>, 491 U.S. at 71 n.10; <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 (1985); <u>see</u> <u>also</u>, <u>McCauley v. Univ. of the V.I.</u>, 618 F.3d 232, 241 (3d Cir. 2010) (holding that when a suit is filed against an official in their official capacity, only injunctive relief is available, to prevent future violations of a protected right). In the present matter, Ogilvie seeks declaratory and injunctive relief against the Fund officials in their official capacities. Based on the holding of <u>*Ex Parte* Young</u> and its progeny, the court declines to dismiss Ogilvie's § 1983 official-capacity claims against the Fund officials on sovereign immunity grounds. The court thus proceeds to consider whether Ogilvie has satisfied her pleading obligations pursuant to Rule 12(b)(6).

### 2. *Rule 12(b)(6)*

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials. <u>See</u> 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law. <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under § 1983, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting

under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

### a. **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It is a direction that all individuals similarly situated be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Artway v. Att'y Gen. of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996). To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, and (2) he or she was treated differently from similarly situated persons outside of his or her protected class. Reed v. Chambersburg Area Sch. Dist., 951 F. Supp. 2d 706, 716 (M.D. Pa. 2013) (citing Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992)).

Ogilvie's pleading states that she "was denied the ability to participate in . . . adversarial proceedings against her because of her disability, while other similarly situated attorneys were allowed to do so." (Doc. 24 ¶ 130). The Fund defendants contend that Ogilvie's equal protection claim must be dismissed because her "allegations are too vague to be actionable." (Doc. 32 at 16). The court agrees with the Fund defendants on this issue.

Ogilvie's amended complaint is devoid of any substantive allegations that she was treated differently from those who are similarly situated to her. Specifically, Ogilvie does not allege that the Fund applied its procedural policies differently to her than to non-disabled respondent attorneys under investigation by the Fund.

Neither does Ogilvie allege that the Fund has granted other attorneys' requests to suspend the Fund's proceedings against them indefinitely. In short, the amended complaint contains no statements of fact regarding disparate treatment, and Ogilvie's bald assertions are without merit. Accordingly, this claim will accordingly be dismissed.

### b.    <u>Procedural Due Process</u>

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To prevail on a § 1983 procedural due process claim, a plaintiff must demonstrate (1) that he or she was deprived of a protected liberty or property interest under the Fourteenth Amendment, and (2) that the procedures afforded him or her failed to comport with the requirements of due process. <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000)). In assessing the constitutional necessity of a procedural protection, courts must weigh the following factors: "(1) the burdens that a requested procedure would impose on the Government; . . . (2) the private interest at stake, . . . [and] (3) the risk of an erroneous deprivation of that interest without the procedure and the probable value, if any, of the additional . . . procedural safeguard." <u>Kaley v. United States</u>, 134 S. Ct. 1090, 1100 (2014) (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)).

The court discerns the gravamen of Ogilvie's procedural due process claim to be the following: the Fund prospectively deprived Ogilvie of the right to practice law without first paying $5000, and in so doing, failed to provide due process of law.

(See Doc. 24 ¶¶ 138-40). The Fund defendants urge dismissal of this claim, arguing that Ogilvie has neither "articulate[d] a property interest that she was deprived of" nor exhausted "the procedural review process available under the Fund's . . . Regulations." (Doc. 32 at 22).

The Supreme Court has held that the opportunity to qualify for the practice of law may constitute a property interest protected under the Fourteenth Amendment. Schware v. Bd. of Bar Exam. of N.M., 353 U.S. 232, 247 (1957). A procedural due process claim becomes ripe "at the moment an individual is deprived of a . . . property interest without being afforded the requisite process." Burns v. Pa. Dep't of Corr., 544 F.3d 279, 284 (3d Cir. 2008). In Centifanti v. Nix, 856 F.2d 1422 (3d Cir. 1989), a formerly admitted attorney, who was denied reinstatement to the state bar, asserted procedural due process claims challenging the Pennsylvania Rules of Disciplinary Enforcement governing attorney reinstatement. Id. Therein, the Third Circuit explained that the attorney lacked standing to challenge the rules until the point at which his petition for reinstatement was under review, namely "until he had suffered or was about to suffer an actual injury." Id. at 1433.

In the instant case, whether Ogilvie's alleged property deprivation is "actual or imminent," as opposed to "conjectural or hypothetical," is far from pellucid. Lujan, 504 U.S. at 560-61 (1992). The Pennsylvania Supreme Court has yet to deny her the opportunity to pursue reinstatement to the state bar; the Pennsylvania Supreme Court has merely indicated that Ogilvie must reimburse the Fund for its disbursement to Mr. Simpson before she is eligible to apply for reinstatement. (See

Doc. 24 ¶ 104). Assuming *arguendo* that Ogilvie has been deprived of a protected property interest, she fails to demonstrate that the Fund's procedures are constitutionally insufficient.

Procedural due process requirements dictate that "a deprivation of a property interest be preceded by notice and opportunity for hearing appropriate to the nature of the case." Gikas v. Wash. Sch. Dist., 328 F.3d 731, 738 (3d Cir. 2003); see K.S.S. v. Montgomery Cty. Bd. of Comm'rs, 871 F. Supp. 2d 389, 397 (E.D. Pa. 2012) ("At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." (quoting Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)). Before a plaintiff may successfully assert a procedural due process claim, the plaintiff must take "advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Alvin, 227 F.3d at 116. This court has held that "a state provides constitutionally adequate procedural due process when it provides 'reasonable remedies to rectify a legal error by a local administrative body.' " Desi'z Pizza, Inc., 2006 WL 2460881, at *17 (quoting DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir. 1995)).

In the action *sub judice*, Ogilvie concedes that the Fund affords respondent attorneys prior notice, an opportunity to be heard, and thirty days to petition for reconsideration, after which the Fund may accept late-filed petitions for reconsideration at its discretion. (See Doc. 24 ¶ 82); PA. R.D.E. 521(b), (e); PA. LAWYERS FUND REGULATION 3.2(f) ("FUND R."); see also Alvin, 227 F.3d at 116. Ogilvie further acknowledges that on one occasion, she commenced to petition the

Fund for reconsideration but "was not well enough to follow-up with the request." (Doc. 24 ¶ 82). Ogilvie does not contest that she received notice and an opportunity to be heard prior to the Fund's adjudication of Mr. Simpson's claim. Neither does Ogilvie assert that she has exhausted all available post-adjudication remedies. See Zinermon v. Burch, 494 U.S. 113, 125-26 (1990) (stating that a procedural due process claim is not actionable "unless and until the State fails to provide due process"). Moreover, as explained *supra*, the procedural safeguards Ogilvie advocates would grossly undermine the state's ability to redress attorney misconduct. See Kaley, 134 S. Ct. at 1100. Accordingly, the Fund defendants' motion to dismiss Ogilvie's procedural due process claim will be granted.

### c.    Freedom of Association

The First Amendment nowhere explicitly protects the freedom to associate, but the Supreme Court has recognized this freedom as a fundamental right protected by the Constitution. NAACP v. Alabama, 357 U.S. 449, 460-61 (1958). By definition, it is the freedom to associate for the purposes of engaging in activities protected by the First Amendment, such as speech, assembly, petitioning the government, and the exercise of religion. Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984). The Supreme Court has recognized the right in "two distinct senses:" expressive association and intimate association. Id. at 617.

Expressive association protects the ability of individuals to gather for the purpose of pursuing "political, social, economic, educational, religious, and cultural ends." Id.; see also Pi Lambda Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 443 (3d Cir. 2000). To invoke the right, a group "must engage in some form of

expression, whether it be public or private" beyond that which is "merely incidental" to the plaintiff's everyday activity. Boy Scouts of Am. v. Dale, 530 U.S. 640, 648, 655 (2000); Pi Lambda, 229 F.3d at 443-44. Mere social relationships receive no protection. Dale, 530 U.S. at 655.

The right of intimate association protects the closest and most interdependent of human relationships against state interference. See Pi Lambda, 229 F.3d at 441-42. It protects relationships that " 'by their nature involve deep attachments and commitments to the necessarily few other individuals with whom one shares . . . distinctively personal aspects of one's life.' " Id. (quoting Roberts, 468 U.S. at 619-20).

Ogilvie alleges that defendants have "allowed complainant and potential clients, friends and associates [sic] believe that Plaintiff is dishonest and therefore the Fund destroys Plaintiff's ability to associate." (Doc. 24 ¶ 135). She further expresses concern that former clients will learn of the Fund's adverse determination and believe she has "done something wrong." (Id.) The Fund defendants assert that Ogilvie's amended complaint "fails to allege any association contemplated by the First Amendment." (Doc. 32 at 16). The court is compelled to agree with defendants.

Ogilvie proffers no tenable explanation for how the Fund's actions impede her ability to associate with friends, associates, and former clients. Furthermore, her pleadings are woefully bereft of detail regarding the purpose and manner of her allegedly impacted associations; for example, she does not describe purposeful advocacy, political activity, or deeply personal relationships. See Roberts, 468 U.S.

at 617-19.  Ogilvie's assertions merely reveal her discomfort with the public nature of the Fund's adverse findings.  Quite simply, Ogilvie has set forth no factual allegations which would support a freedom of association claim; her First Amendment cause of action will be dismissed.

### d.    <u>Contract Clause</u>

The Contract Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."   U.S. CONST. art. I, § 10, cl. 1.  To assert a claim under this constitutional provision, a plaintiff is required to "demonstrate that a 'change in state law has operated as a substantial impairment of a contractual relationship.' "  <u>Mabey Bridge & Shore, Inc. v. Schoch</u>, 666 F.3d 862, 873-74 (3d Cir. 2012) (quoting <u>Gen. Motors Corp. v. Romein</u>, 503 U.S. 181, 186 (1992)).  The Clause applies exclusively to the exercise of legislative power and thus does not encompass judicial or executive acts.  <u>Mabey</u>, 666 F.3d at 874.

Ogilvie complains that the Fund "has violated its contract with Plaintiff to abide by its rules and regulations."  (Doc. 24 ¶ 135).  Specifically, she states that the Fund's actions have caused her to "lose the benefit of the bargain that she contracted for with complaining parties."  (<u>Id.</u> ¶ 144).  It is clear to the court that Ogilvie misapprehends the intended scope of the Contract Clause.  Ogilvie does not assert her claim against a legislative body.  <u>See</u> <u>Mabey</u>, 666 F.3d at 874.  Neither does she make reference to a private contract which has been impaired as a result of state action.  <u>Id.</u>  Further, she fails to cite any "change in state law" which would trigger the Contract Clause's applicability.  <u>Id.</u> at 873.  In sum, Ogilvie's factual

pleadings bear no resemblance to the necessary elements of a Contract Clause claim. The motion to dismiss will be granted as to this claim.

### e.      <u>Fund Rules and Regulations</u>

Ogilvie challenges the constitutionality of Pennsylvania Rule of Disciplinary Enforcement 503 as applied; Rule 531 on its face and as applied; and Rule 521 on its face. (Doc. 24 ¶¶ 162-73). Ogilvie additionally advances facial challenges to the constitutionality of Fund Regulations 3.2(g), 3.4(b), and 3.4(c). (Id. ¶¶ 170-76). Re-asserting many of her previously raised arguments, Ogilvie contends that certain provisions of said rules and regulations violate the Due Process Clause of the Fourteenth Amendment. The Fund defendants and the Pennsylvania Supreme Court move to dismiss each of Ogilvie's claims, asserting that the challenged provisions comport with the procedural due process requirements of the Fourteenth Amendment. (Doc. 32 at 24-28; Doc. 40 at 9-15). The court will address each of Ogilvie's claims *seriatim*.

#### i.      *Disciplinary Rule 503*

In relevant part, Disciplinary Rule 503 states as follows:

> All communications to the Board, a hearing committee, Counsel to the Board or Staff relating to Dishonest Conduct by a Covered Attorney and all testimony given in a proceeding conducted pursuant to this subchapter shall be absolutely privileged and the person making the communication or giving the testimony shall be immune from civil suit based upon such communication or testimony.

Pa. R.D.E. 503(g).

In support of her as-applied challenge to Rule 503, Ogilvie asserts that the rule "provides blanket immunity to claimants who made statement [sic] during an investigation, in-spite [sic] of the fact that the statements are knowingly false and made with the intent to commit a fraud upon the Fund." (Doc. 24 ¶ 163). Ogilvie's *ipse dixit* argument is unavailing.

An as-applied challenge contends that a law's application "to a particular person under particular circumstances deprived that person of a constitutional right." United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010). As the court analyzed *supra*, Ogilvie fails to articulate a procedural due process claim in the case *sub judice*. Moreover, the court notes that in Pennsylvania, judicial privilege extends to "communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." Post v. Mendel, 510 Pa. 213, 216 (1986). As the Third Circuit has explained, "Without the protection of the privilege for communications necessary to such exploration, access to the courts would be impaired, witnesses would be intimidated and lawyers' efforts in pursuit of their clients['] causes would be chilled." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 312 (3d Cir. 2003). Viewed thusly, the court concludes that Ogilvie has failed to establish that the Fund applied Rule 503 unconstitutionally in resolving complaints against Ogilvie. This claim will also be dismissed.

ii.     ***Disciplinary Rule 531***

Disciplinary Rule 531 provides that "[n]o person will be reinstated by the [Pennsylvania] Supreme Court . . . until the Fund has been repaid in full, plus 10%

per annum interest, for all disbursements made from the Fund." PA. R.D.E. 531. Ogilvie advances both facial and as-applied challenges to Rule 531. (Doc. 24 ¶¶ 165-68). A litigant asserting a facial challenge confronts a difficult burden; specifically, "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [provision] would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

As the court has already discussed, Ogilvie fails to demonstrate that the regulatory scheme which governs the Fund lacks constitutionally adequate procedural safeguards. Importantly, a respondent attorney only becomes subject to Rule 531 after receiving notice of an adverse complaint and an opportunity to be heard. PA. R.D.E. 521(b). Following an unfavorable decision by the Fund, attorneys are afforded thirty days to petition the Fund for reconsideration. PA. R.D.E. 521(e). Once this period concludes, the Fund may still elect to accept such petitions on a case-by-case basis. FUND R. 3.2(f). These procedures are set forth in the Fund's rules and regulations, and they have been made explicitly available to Ogilvie throughout her involvement with the Fund. Finally, in the amended complaint, Ogilvie does not demonstrate that no set of circumstances exists under which Rule 531 would be valid. See Wash. State Grange, 552 U.S. at 449. Defendants' motion to dismiss Ogilvie's claim will therefore be granted.

### iii. *Disciplinary Rule 521 and Regulation 3.2(g)*

Disciplinary Rule 521 states the following:

> The Claimant or Covered Attorney may request a
> reconsideration of the denial or approval of an award.
> Such request for a reconsideration shall be made in
> writing and shall be received by the Fund within 30 days
> of the date of the notification of the Board's denial or
> approval of an award. If the Claimant or Covered
> Attorney fails to make such a request, or the request is
> denied, the decision of the Board is final and there is no
> further right of appeal.

PA. R.D.E. 521(e). Fund Regulation 3.2(g) includes substantively equivalent language. FUND R. 3.2(g). Fund Regulation 3.2(f) also states that the "Board may reconsider a prior determination of a claim *sua sponte*." FUND R. 3.2(f).

Ogilvie's facial challenge to Rule 521 and Regulation 3.2(g) is predictably destined to fail, for the same reasons set forth above. Ogilvie points to no authority which establishes that the Fund is constitutionally required to afford a right of appeal to respondent attorneys. See generally Eldridge, 424 U.S. at 335 ("[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."). This claim shall also be rejected.

### iv. *Regulations 3.4(b) and 3.4(c)*

Fund Regulations 3.4(b) and 3.4(c) state the following:

> 3.4(b)  The Board shall not be bound by technical or
> formal rules of procedure or evidence. The Board
> shall be the sole judge of the relevancy and
> materiality of the evidence offered.

> 3.4(c)  There shall be no stenographic record of the
> proceedings, unless the Board determines, in its
> sole discretion, there is a need for a stenographic
> record.

FUND R. 3.4(b), (c).  Ogilvie facially challenges Regulations 3.4(b) and 3.4(c).  However, she fails to demonstrate that proceedings which are not bound by technical rules of evidence and do not include a stenographer cannot provide due process of law.  See Wash. State Grange, 552 U.S. at 449; see also McKivitz v. Twp. of Stowe, 769 F. Supp. 2d 803, 834 (W.D. Pa. 2010) ("[T]he Board's decision to proceed without a stenographer provides no basis for a procedural due process claim.").  Hence, Ogilvie's last remaining federal claim will not be allowed to proceed.

### F.    State Law Claims

In view of the foregoing conclusions, the amended complaint fails to state a federal claim.  The court therefore declines to exercise jurisdiction over Ogilvie's supplemental state law claims.  28 U.S.C. § 1367; De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003).

### G.    Leave to Amend

#### 1.    *Proposed Second Amended Complaint*

On March 3, 2015, Ogilvie filed the instant motion (Doc. 63) for leave to file a second amended complaint.  Therein, Ogilvie seeks to withdraw the § 1983 Contract Clause claim and the state law theft claim and to add state law claims for breach of contract and wrongful use of civil proceedings against her former clients.  (Compare Doc. 24 ¶¶ 141-45, 159-61, with Doc. 63, Ex. 1 ¶¶ 316-18).  Ogilvie also endeavors to join as defendants Chief Justice Thomas Saylor of the Pennsylvania Supreme Court ("Chief Justice Saylor"), in his official capacity; the First Judicial District of Pennsylvania; Administrative Judge Kevin M. Dougherty of the First Judicial

District of Pennsylvania, in his official capacity; Philadelphia Sheriff Jewell Williams, in his official capacity; the Philadelphia Traffic Court; Administrative Judge Gary Glazer of the Philadelphia Traffic Court, in his official capacity; the City and County of Philadelphia; and Philadelphia Mayor Michael Nutter, in his official capacity (collectively, "proposed defendants"). (Compare Doc. 24, with Doc. 63, Ex. 1).

In her proposed amended pleading, Ogilvie supplements the factual statements set forth in the amended complaint and includes a litany of averments as to the proposed defendants. Specifically, Ogilvie summarily notes two incidents of unlawful arrest and at least one unpaid speeding ticket, which caused her Pennsylvania driver's license to be suspended. (Doc. 63, Ex. 1 ¶¶ 32, 43, 54-56). Ogilvie further states that the First Judicial District of Pennsylvania permitted foreclosure proceedings to take place in her absence; entered default judgment against her as a result; and facilitated the sale of her property by the Philadelphia Sheriff. (Id. ¶¶ 62-85). As to each episode, Ogilvie contends that she was unable "to fully participate in any adversarial proceeding against her" due to her disabilities. (E.g., id. ¶¶ 55, 60, 80, 85). She asserts that the proposed defendants violated the

ADA, the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C.

§ 794,[12] and the Fourteenth Amendment by failing to comply with the 2010 order

issued by the Pennsylvania Supreme Court and by generally precluding disabled

---

[12] Ogilvie pleads her disability discrimination claim identically in the amended complaint and the second amended complaint. (<u>Compare</u> Doc. 24 ¶¶ 90-97, <u>with</u> Doc. 63, Ex. 1 ¶¶ 249-56). In the second amended complaint, Ogilvie merely includes the Rehabilitation Act in the caption and adds the proposed defendants thereunder. (Doc. 63, Ex. 1 at 50).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Under § 504, a plaintiff must show that: (1) he or she is a "handicapped individual;" (2) he or she is "otherwise qualified" for participation in the program; (3) the program receives "federal financial assistance;" and (4) he or she was "denied the benefits of" or "subject to discrimination" under the program. <u>Nathanson v. Med. Coll. of Pa.</u>, 926 F.2d 1368, 1380 (3d Cir. 1991). The Third Circuit has held that the ADA and the Rehabilitation Act are generally interpreted consistently, <u>Emerson</u>, 296 F.3d at 189, and that the same standards govern claims brought under Title II of the ADA and Section 504 of the Rehabilitation Act, <u>Chambers</u>, 587 F.3d at 189. For the reasons stated *supra*, the court concludes that Ogilvie's disability discrimination allegations fall short of raising a plausible inference of disability discrimination under the ADA and the Rehabilitation Act.

parties from enjoying meaningful access to the judicial system.[13] (Id. ¶¶ 43-103, 105-23, 249-302). In addition to the relief sought in the amended complaint, Ogilvie requests the court to order the Pennsylvania Supreme Court, the First Judicial District of Pennsylvania, the City and County of Philadelphia, the Philadelphia Sheriff, and the Philadelphia Traffic Court to comply with "the United States Constitution, the Rehabilitation Act, and the ADA." (Id. ¶ 336(I)-(J)). She additionally petitions the court to supervise defendants' implementation thereafter. (Id. ¶ 336(J)).

### 2. *Futility*

In support of her motion for leave to file a second amended complaint, Ogilvie states that the proposed defendants "were added because they should have all coordinated efforts with the Pennsylvania Supreme Court to assist incapacity [sic] Plaintiff." (Doc. 64). In response, the Fund defendants contend that the second amended complaint improperly joins additional parties "that were not

---

[13] Specifically, in Counts I, II, III, V, and VI Ogilvie alleges violations of the ADA, the Rehabilitation Act, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment, bringing each count against the following defendants: the Fund, the Fund officials, the Pennsylvania Supreme Court, and the proposed defendants. (Doc. 63, Ex. 1 ¶¶ 249-94, 300-07). Count IV asserts a violation of the First Amendment right to freedom of association against the Fund and the Fund officials. (Id. ¶¶ 295-99, 303-07). Counts VII and VIII set forth state law claims for false statement, misrepresentation, fraud, wrongful use of civil proceedings, and breach of contract against Ogilvie's former clients. (Id. ¶¶ 316-18). Finally, in Counts IX through XII, Ogilvie challenges the constitutionality of Pennsylvania Rules of Disciplinary Enforcement 503, 521, and 531 and Fund Regulations 3.2(g), 3.4(b), and 3.4(c). (Id. ¶¶ 319-33). Her claims regarding Disciplinary Rules 503 and 531 are against the Pennsylvania Supreme Court, Chief Justice Saylor, and the Attorney General, and her claims concerning Disciplinary Rule 521 and Fund Regulations 3.2(g), 3.4(b), and 3.4(c) are against the Pennsylvania Supreme Court, Chief Justice Saylor, the Attorney General, the Fund, and Ms. Peifer. (Id.)

involved legally or factually, with any of the claims brought against" the Fund or the Pennsylvania Supreme Court. (Doc. 65 at 3). The Fund defendants also aver that Ogilvie's proposed pleading suffers the same deficiencies as the amended complaint. (Id.)

"Pleadings must be construed so as to do justice." FED. R. CIV. P. 8(e). Rule 8(d)(1) of the Federal Rules of Civil Procedure states, in pertinent part, that "[e]ach allegation must be simple, concise and direct." Rule 20(a)(2) states that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). Rule 20 permits "joinder in a single action of all persons . . . defending against[] a joint, several, or alternative right to relief that arises out of the same transaction or occurrence and presents a common question of law or fact." 7 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1652 (1986).

In the present case, Ogilvie's assertions regarding the proposed defendants bear no relation to the facts set forth in her amended complaint.[14] Ogilvie's presently operative allegations center upon the Fund's adjudication of a complaint filed against her by a former client. The transactions and occurrences pertaining to the proposed defendants involve protracted foreclosure proceedings and the issuance of at least one traffic ticket. Ogilvie posits that the named defendants and

---

[14] Chief Justice Saylor of the Pennsylvania Supreme Court is the only exception. However, Chief Justice Saylor's joinder would not alter the court's futility analysis *infra*.

the proposed defendants share one essential link: each has failed to comply with the Pennsylvania Supreme Court's 2010 order placing her on inactive disabled status. As the court has explained, Ogilvie apparently perceives the 2010 order to have the far-reaching effect of enjoining all current and future criminal and civil proceedings for the duration of her mental incapacity. This misapprehension imbues her pleadings with irreparable factual deficiencies. Ogilvie has not adequately shown that the claims asserted against the proposed defendants arise from the same transactions or occurrences articulated in the underlying suit. Nor has Ogilvie demonstrated that the distinct factual allegations share common questions of law or fact. FED. R. CIV. P. 20(a)(2). In light of the complete paucity of commonality between the instant action and the proposed defendants, joinder will not be permitted.

As noted above, "Amendment [is] futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun, 765 F.3d at 259. Excluding the proposed defendants, the allegations set forth in the proposed second amended complaint are nearly identical in substance to those in the amended complaint. Accepting as true all factual allegations therein and all reasonable inferences that can be drawn therefrom, it is clear that the factual underpinnings of Ogilvie's action cannot support the civil rights claims she seeks to bring. Moreover, Ogilvie's proposed complaint represents her third attempt to satisfy federal pleading requirements. Her lengthy allegations have expanded from 119 paragraphs to 335 paragraphs. (Compare Doc. 1, with Doc. 63, Ex. 1). The scope of Ogilvie's averments has increased with respect to factual detail and number of

defendants, yet her claims remain fatally flawed, both legally and factually. The court concludes that allowing further leave to amend would be futile.

**IV.**   **Conclusion**

For all of the foregoing reasons, the motions (Docs. 26, 38, 59) to dismiss will be granted, and Ogilvie's motion (Doc. 63) for leave to file a second amended complaint will be denied. An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        September 30, 2015